Shaun Setareh (SBN 204514)
  shaun@setarehlaw.com
Jose Maria D. Patino, Jr. (SBN 270194)
  jose@setarehlaw.com
Tyson Gibb (SBN 339154)
  tyson@setarehlaw.com
SETAREH LAW GROUP
9665 Wilshire Boulevard, Suite 430
Beverly Hills, California 90212
Telephone (310) 888-7771
Facsimile (310) 888-0109

Attorneys for Plaintiff JUAN GARZA

[*Additional Counsel on next page*]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN GARZA, GABRIEL GARCIA, and FRANCISCO J. MEZA on behalf of themselves and all others similarly situated,<br><br>      *Plaintiffs*,<br><br>    v.<br><br>SWIFT BEEF COMPANY, a Delaware corporation,<br><br>      *Defendant*. | Case No. 2:22-cv-06223-PSG-E<br><br>**CLASS ACTION**<br><br>**CONSOLIDATED COMPLAINT**<br><br>1. Failure to Provide Meal Periods (Lab. Code §§ 204, 223, 226.7, 512 and 1198)<br>2. Failure to Provide Rest Periods (Lab. Code §§ 204, 223, 226.7 and 1198)<br>3. Failure to Pay Minimum Wages (Lab. Code §§ 223, 1194, 1194.2, 1197, 1197.1 and 1198)<br>4. Failure to Pay Overtime Wages (Lab. Code §§ 223, 510, and 1198)<br>5. Failure to Provide Accurate Written Wage Statements (Lab. Code § 226(a))<br>6. Failure to Timely Pay All Final Wages (Lab. Code §§ 201, 202 and 203)<br>7. Unfair Competition (Bus. & Prof. Code §§ 17200 *et seq.*);<br><br>**JURY TRIAL DEMANDED** |

DAVID YEREMIAN & ASSOCIATES, INC.
David Yeremian (SBN 226337)
david@yeremianlaw.com
Roman Shkodnik (SBN 285152)
roman@yeremianlaw.com
2540 Foothill Blvd., Suite 201
La Crescenta, California 91214
Telephone: (818) 230-8380
Facsimile: (818) 230-0308

Attorneys for Plaintiff GABRIEL GARCIA

Joseph Lavi, Esq. (SBN 209776)
Vincent C. Granberry, Esq. (SBN 276483)
Danielle E. Montero, Esq. (SBN 333945)
LAVI & EBRAHIMIAN, LLP
8889 W. Olympic Boulevard, Suite 200
Beverly Hills, California 90211
Telephone: (310) 432-0000
Facsimile: (310) 432-0001
Email:        jlavi@lelawfirm.com
vgranberry@lelawfirm.com
dmontero@lelawfirm.com
WHT2@lelawfirm.com

Attorneys for Plaintiff FRANCISCO J. MEZA

---

Plaintiffs JUAN GARZA ("Garza"), GABRIEL GARCIA ("Garcia"), and FRANCISCO J. MEZA ("Meza") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, complain and allege as follows:

## INTRODUCTION

1.      Plaintiffs bring this class action against defendant SWIFT BEEF COMPANY ("Defendant"), a Delaware corporation, for alleged violations of the Labor Code. As set forth below, Plaintiffs allege that Defendant has

(1)     failed to provide Plaintiffs and all other similarly situated individuals with meal periods;

(2)     failed to provide them with rest periods;

(3)     failed to pay them premium wages for missed meal and/or rest periods;

(4)     failed to pay them premium wages for missed meal and/or rest periods at the regular rate of pay;

(5)     failed to pay them at least minimum wage for all hours worked;

(6)     failed to pay them overtime wages at the correct rate;

(7)     failed to pay them double time wages at the correct rate;

(8)     failed to provide them with accurate written wage statements; and

(9)     failed to pay them all of their final wages following separation of employment.

Based on these alleged violations, Plaintiffs now bring this class action to recover unpaid wages, restitution, and statutory penalties, and related relief on behalf of themselves and all others similarly situated.

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over Plaintiffs' claims pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. sections 1332(d) and 1453, which grants district courts original jurisdiction over class actions in which the amount in controversy exceeds $5,000,000, there are at least 100 members in the putative class, and any member of the putative class of plaintiffs is a citizen of a

State different from any defendant.  Further, pursuant to 28 U.S.C. § 1332(a)(1), this Court has original jurisdiction over this matter because it is a civil action between citizens of different States where the matter in controversy exceeds the sum or value of $75,000.

3.    Venue is proper in this District under 28 U.S.C. section 1391(b)(2) and (c) because a substantial part of the events and omissions giving rise to the claims alleged in this complaint occurred in this District.

4.    This Court has personal jurisdiction over this matter because Defendant conducts substantial business activity in this District, and because many of the unlawful acts described in this complaint occurred in this District and gave rise to the claims alleged.

## PARTIES

5.    Plaintiffs JUAN GARZA, GABRIEL GARCIA, and FRANCISCO J. MEZA are and were, and at all relevant times mentioned herein, individuals residing in the State of California.

6.    Plaintiffs are informed and believe, and thereupon allege, that Defendant SWIFT BEEF COMPANY is, and at all relevant times mentioned herein, a Delaware corporation doing business in the State of California.

## CLASS ALLEGATIONS

7.    This action has been brought and may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23, because there is a well-defined community of interest among the persons who comprise the readily ascertainable classes defined below and because Plaintiffs are unaware of any difficulties likely to be encountered in managing this case as a class action.

8.    **Relevant Time Period**: The Relevant Time Period is defined as the time period beginning four years prior to the filing of this action until judgment is entered, excluding any time period already released.

///

**Hourly Employee Class**:  All persons employed by Defendant, whether directly or through any staffing agencies and/or any other third parties, in hourly or non-exempt positions in California at any time during the **Relevant Time Period**.

> **Minimum Wage Sub-Class**: All **Hourly Employee Class** members who were not paid at least minimum wage for all time they were subject to Defendant's control at any time during the **Relevant Time Period**.

> **Meal Period Sub-Class**: All **Hourly Employee Class** members who worked in a shift in excess of five hours at any time during the **Relevant Time Period**.

> **Rest Period Sub-Class**: All **Hourly Employee Class** members who worked a shift of at least three and one-half (3.5) hours at any time during the **Relevant Time Period**.

> **Wage Statement Penalties Sub-Class**: All **Hourly Employee Class** members employed by Defendant in California at any time during the period beginning one year before the filing of this action and ending when final judgment is entered, excluding any time period already released.

> **Waiting Time Penalties Sub-Class**: All **Hourly Employee Class** members who separated from their employment with Defendant at any time during the period beginning three years before the filing of this action and ending when final judgment is entered, excluding any time period already released.

**UCL Class**: All **Hourly Employee Class** members employed by Defendant in California at any time during the **Relevant Time Period**.

9.    **Reservation of Rights**:  Plaintiffs reserve the right to amend or modify the class definitions with greater specificity by further division into sub-classes and/or by limitation to particular issues.

10.    **Numerosity**: The class members are so numerous that the individual joinder of each individual class member is impractical. While Plaintiffs do not currently know the exact number of class members, Plaintiffs are informed and believe, and thereupon allege, that the actual number exceeds the minimum required for numerosity under federal law.

11.    **Commonality and Predominance:** Common questions of law and fact exist as to all class members and predominate over any questions that affect only individual class members. These common questions include, but are not limited to:

i.   Whether Defendant maintained a policy or practice of failing to provide employees with their meal periods in accordance with California law;

ii.   Whether Defendant maintained a policy or practice of failing to provide employees with their rest periods in accordance with California law;

iii.   Whether Defendant failed to pay premium wages to class members when they have not been provided with required meal and/or rest periods in accordance with California law;

iv.   Whether Defendant failed to pay minimum and/or overtime wages to class members as a result of policies that fail to provide meal periods in accordance with California law;

v.   Whether Defendant failed to pay minimum and/or overtime wages to class members for all time worked in accordance with California law;

vi.   Whether Defendant failed to provide class members with accurate written wage statements as a result of providing them with written wage statements with inaccurate entries for, among other things, amounts of gross and net wages, and total hours worked, in accordance with California law;

vii.   Whether Defendant applied policies or practices that result in late and/or incomplete final wage payments;

viii.   Whether Defendant violated Labor Code sections 1174 and 1174.5;

ix.   Whether Defendant is liable to class members for waiting time penalties under Labor Code section 203;

x.   Whether class members are entitled to restitution of money or property that Defendant may have acquired from them through unfair competition;

12.   **Typicality:** Plaintiffs' claims are typical of the other class members' claims. Plaintiffs are informed and believe, and thereupon allege, that Defendant has a policy or practice of failing to comply with the Labor Code and Business and Professions Code as alleged in this Complaint.

///

4

13. **Adequacy of Class Representatives:** Plaintiffs are adequate class representatives in that they have no interests that are adverse to or otherwise conflict with the interests of absent class members and are dedicated to vigorously prosecuting this action on their behalf. Plaintiffs will fairly and adequately represent and protect the interests of the other class members.

14. **Adequacy of Class Counsel:** Plaintiffs' counsel are adequate class counsel in that they have no known conflicts of interest with Plaintiffs or absent class members, are experienced in wage and hour class action litigation, and are dedicated to vigorously prosecuting this action on behalf of Plaintiffs and absent class members.

15. **Superiority:** A class action is vastly superior to other available means for fair and efficient adjudication of the class members' claims and would be beneficial to the parties and the Court. Class action treatment will allow a number of similarly situated persons to prosecute their common claims simultaneously and efficiently in a single forum without the unnecessary duplication of effort and expense that numerous individual actions would entail. In addition, the monetary amounts due to many individual class members are likely to be relatively small and would thus make it difficult, if not impossible, for individual class members to both seek and obtain relief. Moreover, a class action will serve an important public interest by permitting class members to effectively pursue the recovery of monies owed to them. Further, a class action will prevent the potential for inconsistent or contradictory judgments inherent in individual litigation.

## GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

16. Garza worked for Defendant as an hourly, non-exempt employee in California from approximately November 4, 2019, through April 14, 2021.

17. Garcia worked for Defendant as an hourly, non-exempt employee in California from approximately January 13, 2022, through June 7, 2022.

18. Meza worked for Defendant as an hourly, non-exempt employee in California from approximately August 2020 through the present.

## **Donning and Doffing Protective Gear**

19.     During the applicable limitations period, Plaintiffs and the putative class were required to don and doff protective gear—specifically, gloves, a hairnet, and coat—because they directly handled, cut, and processed raw meat.

20.     This protective gear was handed out to employees by a few designated personnel, usually cleaning crew, at a single counter where supplies were kept.  If there were not enough supplies, employees would have to wait a few extra minutes for the cleaning crew to bring new supplies to hand out.

21.     Before entering a work area, an employee would have to go to the single supply counter where protective gear was issued, wait for the personnel assigned there to provide him or her with a complete set of protective gear, don the protective gear, and—if starting the shift or returning from a meal period—clock in and be present at their workstation by the time the bell rang.  A supervisor would be monitoring the work area for anyone not present at the time the bell rang, and anyone not timely present would be subjected to discipline.

22.     When leaving the work area for a break, for a meal period, or at the end of a shift, an employee would first have to go to the locker room to remove and dispose of their protective gear, and then—if ending the shift or going on a meal period—clock out.

23.     The time spent retrieving and donning this protective gear was time spent under the control of Defendant, and such time is, thus, compensable under California law.  To the extent such time was incurred but not recorded and paid for, Defendant has failed to pay Plaintiff and the putative class all wages owed.

24.     Garza was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant, including, for instance, on shifts during the pay period ending April 11, 2021.

25.     Garcia was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant, including, for instance, on shifts during the pay period ending June 7, 2022.

26.    Meza was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant, including, for instance, on shifts during the pay period ending March 6, 2022.

### Cell Phone/Walkie-Talkie Usage (Off-the-Clock)

27.    During the applicable limitations period, Plaintiffs and the putative class members were required to utilize their personal cellphones or keep their employer-issued walkie-talkies on their person, monitored, and to respond to calls received on them at all times during their shift, including while off-the-clock during their meal breaks, to communicate with management about work-related questions and issues. Plaintiffs and the putative class members would spend several minutes per week utilizing their personal cellphones to answer work-related questions from managers.

28.    Defendant did not pay wages or otherwise compensate Plaintiffs or putative class members for this time worked.

29.    Defendant's practices, including the facts stated above and herein, have resulted in substantial amounts of time not recorded as hours worked that have resulted in Defendant's failure to pay substantial amounts of earned wages to Plaintiffs and the putative class.

30.    Garza was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant, including, for instance, on shifts during the pay period ending April 11, 2021.

31.    Garcia was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant, including, for instance, on shifts during the pay period ending June 7, 2022.

32.    Meza was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant, including, for instance, on shifts during the pay period ending March 6, 2022.

///

///

**COVID-19 Check and Insufficient Time Clocks (Off-the-Clock)**

33.     Since the Outbreak of COVID-19, Plaintiffs and the putative class were required to utilize the general entrance to the workplace and were required to line up to wait to undergo and undergo off-the-clock COVID-19 temperature checks.

34.     Plaintiff the putative class were not paid for this time resulting in Defendant's failure to pay minimum wage for all the hours Plaintiffs and the putative class worked.

35.     Plaintiffs and the putative class were required to spend a few minutes each time they went through the COVID-19 check—time for which they were not paid by Defendant.

36.     Plaintiffs and the putative class were required to go through the COVID-19 check prior to clocking in at the beginning of each work shift.

37.     Plaintiffs and the putative class members were required to wait in line for up to five minutes before they were able to clock back in from their meal breaks due to Defendant not having enough time clocks available.

38.     Based on the above, Defendant's COVID-19 check practices have resulted in substantial amounts of time not recorded as hours worked, resulting in substantial amounts of wages not paid to Plaintiffs and the putative class.

39.     Garza was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant, including, for instance, on shifts during the pay period ending April 11, 2021.

40.     Garcia was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant, including, for instance, on shifts during the pay period ending June 7, 2022.

41.     Meza was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant, including, for instance, on shifts during the pay period ending March 6, 2022.

///

### **Missed and/or Shortened Meal Periods**

42.    During the applicable limitations period, Plaintiffs and the putative class members were not provided with meal periods of at least thirty (30) minutes for each five (5) hour work period due to (1) chronically understaffing each work shift with not enough workers; (2) imposing so much work on each employee such that it made it unlikely that an employee would be able to take their breaks within five hours if they wanted to finish their work on time; (3) donning and doffing protective gear as described in paragraphs 19-23; and (4) interruptions by their managers and/or supervisors with work-related questions.

43.    Defendant had a policy of providing only 30 minutes each shift for a meal period, the start and end of which are indicated by the sound of a bell exactly 30 minutes apart.  Employees—only at the sound of the meal period starting bell and no earlier—first would have to go to the locker room to remove and dispose of their protective gear and then clock out for lunch.  When the meal period ending bell sounded, employees were required to be back at their workstations and ready to work, or they would be disciplined for tardiness. Therefore, prior to the sounding of that bell, they would have to go to the single supply counter and wait for the personnel assigned there to provide them with sets of protective gear, don the protective gear, then clock in from the meal period, and be back at their workstation by the time the bell rang at the end of the meal period exactly 30 minutes after the starting bell.

44.    Defendant failed to provide Plaintiffs and putative class members duty-free meal breaks due to Defendant requiring Plaintiff and putative class members to keep their employer-issued walkie-talkies on their person, monitored, and to respond to calls received on them while off-the-clock during their meal breaks.

45.    As a result of Defendant's policy, Plaintiffs and the putative class were regularly not provided with uninterrupted meal periods of at least thirty (30) minutes for each five (5) hours worked.

///

46.     Garza was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant, including, for instance, on shifts during the pay period ending April 11, 2021.

47.     Garcia was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant, including, for instance, on shifts during the pay period ending June 7, 2022.

48.     Meza was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant, including, for instance, on shifts during the pay period ending March 6, 2022.

## Missed Rest Periods

49.     Plaintiffs and the putative class were not provided with rest periods of at least ten (10) minutes for each four (4) hour work period, or major fraction thereof, due to (1) Defendant's policy of not scheduling each rest period as part of each work shift; (2) chronically understaffing each work shift with not enough workers; (3) donning and doffing protective gear when leaving and returning from rest breaks in line with the process described in paragraphs 19-23; and (4) imposing so much work on each employee such that it made it unlikely that an employee would be able to take their breaks if they wanted to finish their work on time.

50.     Plaintiffs and the putative class members would have their rest breaks constantly interrupted by their managers and/or supervisors with work-related questions.

51.     Defendant failed to provide Plaintiffs and putative class members duty-free meal breaks due to Defendant requiring Plaintiff and putative class members to keep their employer-issued walkie-talkies on their person, monitored, and to respond to calls received on them while off-the-clock during their meal breaks.

52.     As a result of Defendant's policy, Plaintiffs and the putative class were regularly not provided with uninterrupted rest periods of at least ten (10) minutes for each four (4) hours worked due to complying with Defendant's productivity requirements that required Plaintiffs and the putative class to work through their rest

periods in order to complete their assignments on time, and requirements relating to donning and doffing protective gear.

53.    Garza was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant, including, for instance, on shifts during the pay period ending April 11, 2021.

54.    Garcia was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant, including, for instance, on shifts during the pay period ending June 7, 2022.

55.    Meza was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant, including, for instance, on shifts during the pay period ending March 6, 2022.

## Rounding of Recorded Time Worked

56.    Plaintiffs and the putative class were either not paid by Defendant for all hours worked or were not paid at the appropriate overtime rates. Specifically, Defendant required them to clock in and out on Defendant's time clocks. The timekeeping system thus permitted Defendant to record clock in and clock out times to the real-time minute. However, rather than paying for all hours and minutes they actually worked, Defendant followed a uniform policy and practice of rounding all time entries to the nearest quarter hour (i.e., to the nearest 15-minute time increment) and generally did so to the detriment of its employees, and these unlawfully rounded time entries were entered into Defendant's payroll system from which wage statements and payroll checks were created. Defendant did so with the ostensible intent of paying Plaintiffs and the putative class only for the hours they were scheduled to work, rather than the hours they were actually subjected to Defendant's control. Plaintiffs contend this policy is not neutral and results, over time, to the detriment of the putative class by systematically undercompensating them.

## Inaccurate Wage Statements

57.    Plaintiffs and the putative class were not provided with accurate wage

statements as mandated by law pursuant to Labor Code § 226.

58.    Defendant failed to comply with Labor Code section 226(a)(1) as "gross wages earned" were not accurately reflected in that all hours worked, including overtime, were not included.

59.    Defendant failed to comply with Labor Code section 226(a)(2) as "total hours worked by the employee" were not accurately reflected in that all hours worked, including overtime, were not included.

60.    Defendant failed to comply with Labor Code section 226(a)(5) as "net wages earned" were not accurately reflected in that all hours worked, including overtime, were not included.

61.    Defendant failed to comply with Labor Code section 226(a)(9) as "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee" were not accurately reflected in that all hours worked, including overtime, were not included.

### **Inaccurate Payroll Records**

62.    Defendant has consistently failed to keep accurate time and wage records as required by California Labor Code § § 1174 and 1174.5.

### **FIRST CAUSE OF ACTION**

### **FAILURE TO PROVIDE MEAL PERIODS**

### **(Lab. Code §§ 204, 223, 226.7, 512 and 1198)**

### **(Plaintiffs and Meal Period Sub-Class)**

63.    Plaintiffs incorporate by reference the preceding paragraphs as if fully alleged herein.

64.    At all relevant times, Plaintiffs and the **Meal Period Sub-Class** members have been non-exempt employees of Defendant entitled to the full meal period protections of both the Labor Code and the applicable Industrial Welfare Commission Wage Order ("Wage Order").

65.    Labor Code § 512 and § 11 of the applicable Wage Order impose an

affirmative obligation on employers to provide non-exempt employees with uninterrupted, duty-free meal periods of at least thirty minutes for each work period of five hours, and to provide them with two uninterrupted, duty-free meal periods of at least thirty minutes for each work period of ten hours.

66.    Labor Code § 226.7 and § 11 of the applicable Wage Order both prohibit employers from requiring employees to work during required meal periods and require employers to pay non-exempt employees an hour of premium wages on each workday that the employee is not provided with the required meal period.

67.    Compensation for missed meal periods constitutes wages within the meaning of Labor Code § 200.

68.    Labor Code § 1198 makes it unlawful to employ a person under conditions that violate the applicable Wage Order.

69.    Section 11 of the applicable Wage Order states:

> No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and employee. Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked.  An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to.  The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

70.    At all relevant times, Plaintiffs were not subject to a valid on-duty meal period agreement. Plaintiffs is informed and believes that, at all relevant times, **Meal Period Sub-Class** members were not subject to valid on-duty meal period agreements with Defendant.

71.    Plaintiffs allege that, at all relevant times during the applicable limitations period, Defendant maintained a policy or practice of not providing Plaintiffs and members of the **Meal Period Sub-Class** with uninterrupted, duty-free meal periods for at least thirty (30) minutes for each five (5) hour work period, as required by Labor Code § 512 and the applicable Wage Order.

72. Plaintiffs allege that, at all relevant times during the applicable limitations period, Defendant maintained a policy or practice of failing to pay premium wages to **Meal Period Sub-Class** members when they worked five (5) hours without clocking out for any meal period.

73. At all relevant times, Defendant failed to pay Plaintiffs and the **Meal Period Sub-Class** members additional premium wages, and/or were not paid premium wages at the employees' regular rates of pay when required meal periods were not provided.

74. Pursuant to Labor Code §§ 204, 218.6 and 226.7, Plaintiffs, on behalf of themselves and the **Meal Period Sub-Class** members, seek to recover unpaid premium wages, interest thereon, and costs of suit.

75. Pursuant to Labor Code § 1194, Code of Civil Procedure § 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiffs, on behalf of themselves and the **Meal Period Sub-Class** members, seeks to recover reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

### FAILURE TO PROVIDE REST PERIODS

### (Lab. Code §§ 204, 223, 226.7 and 1198)

### (Plaintiffs and Rest Period Sub-Class)

76. Plaintiffs incorporate the preceding paragraphs as if fully alleged herein.

77. At all relevant times, Plaintiffs and the **Rest Period Sub-Class** members have been non-exempt employees of Defendant entitled to the full rest period protections of both the Labor Code and the applicable Wage Order.

78. Section 12 of the applicable Wage Order imposes an affirmative obligation on employers to permit and authorize employees to take required rest periods at a rate of no less than ten minutes of net rest time for each four-hour work period, or major fraction thereof, that must be in the middle of each work period insofar as practicable.

79. Labor Code § 226.7 and § 12 of the applicable Wage Order both prohibit

14

employers from requiring employees to work during required rest periods and require employers to pay non-exempt employees an hour of premium wages at the employees' regular rates of pay, on each workday that the employee is not provided with the required rest period(s).

80. Compensation for missed rest periods constitutes wages within the meaning of Labor Code § 200.

81. Labor Code § 1198 makes it unlawful to employ a person under conditions that violate the Wage Order.

82. Plaintiffs allege that, at all relevant times during the applicable limitations period, Defendant maintained a policy or practice of not providing members of the **Rest Period Sub-Class** with net rest period of at least ten minutes for each four-hour work period, or major fraction thereof, as required by the applicable Wage Order.

83. At all relevant times, Defendant failed to pay Plaintiffs and the **Rest Period Sub-Class** members additional premium wages when required rest periods were not provided.

84. Pursuant to Labor Code §§ 204, 218.6 and 226.7, Plaintiffs, on behalf of themselves and **Rest Period Sub-Class** members, seeks to recover unpaid premium wages, interest thereon, and costs of suit.

85. Pursuant to Labor Code § 1194, Code of Civil Procedure § 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiffs, on behalf of themselves and **Rest Period Sub-Class** members, seek to recover reasonable attorneys' fees.

### THIRD CAUSE OF ACTION
### FAILURE TO PAY MINIMUM WAGES
### (Lab. Code §§ 223, 1194, 1194.2, 1197, 1197.1 and 1198)
### (Plaintiffs and Minimum Wage Sub-Class)

86. Plaintiffs re-allege and incorporate all preceding paragraphs, as though set forth in full herein.

87.    Defendant failed to pay Plaintiffs and **Minimum Wage Sub-Class** members minimum wages for all hours worked. Defendant had a consistent policy of misstating employees' time records and failing to pay employees for all hours worked. Specifically, Defendant had a consistent policy of failing to pay employees for hours worked during alleged meal periods for which employees were consistently denied. (*See infra*). Also, Defendant rounded timekeeping entries and revisions made to timekeeping records to reflect less time worked than was actually worked by Plaintiff and Class members while under the control of Defendant, and Defendant has also intentionally and improperly rounded, changed, adjusted, and/or modified employee hours, while benefitting Defendant. California Labor Code § 1197, entitled "Pay of Less Than Minimum Wage" states:

> The minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than the minimum so fixed is unlawful.

88.    The applicable minimum wages fixed by the commission for work during the relevant period is found in the Wage Orders. Pursuant to the Wage Orders, Plaintiffs and **Minimum Wage Sub-Class** members are therefore entitled to double the minimum wage during the relevant period.

89.    The minimum wage provisions of California Labor Code are enforceable by private civil action pursuant to California Labor Code § 1194(a) which states:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees and costs of suit.

90.    As described in California Labor Code §§ 1185 and 1194.2, any action for wages incorporates the applicable Wage Order of the California Industrial Welfare Commission.

91.    California Labor Code § 1194.2 also provides for the following remedies:

> In any action under Section 1194 . . . to recover wages because of the payment of a wage less than the minimum wages fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

92.    Defendant has the ability to pay minimum wages for all time worked and have willfully refused to pay such wages with the intent to secure for Defendant a discount upon this indebtedness with the intent to annoy, harass, oppress, hinder, delay, or defraud employees.

93.    Wherefore, employees are entitled to recover the unpaid minimum wages (including double minimum wages), liquidated damages in an amount equal to the minimum wages unlawfully unpaid, interest thereon and reasonable attorney's fees and costs of suit pursuant to California Labor Code § 1194(a).

<u>**FOURTH CAUSE OF ACTION**</u>

**FAILURE TO PAY HOURLY AND OVERTIME WAGES**

**(Lab. Code §§ 223, 510, 1194, 1197 and 1198)**

**(Plaintiffs and Hourly Employee Class)**

94.    Plaintiffs incorporate the preceding paragraphs as if fully alleged herein.

95.    At all relevant times, Plaintiffs and **Hourly Employee Class** members are or have been non-exempt employees of Defendant entitled to the full protections of the Labor Code and the applicable Wage Order.

96.    Section 2 of the applicable Wage Order defines "hours worked" as "the time during which an employee is subject to the control of the employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

97.    Section 4 of the applicable Wage Order requires an employer to pay non-exempt employees at least the minimum wage set forth therein for all hours worked, which consists of all hours that an employer has actual or constructive knowledge that employees are working.

98.    Labor Code § 1194 invalidates any agreement between an employer and an

17

employee to work for less than the minimum or overtime wage required under the applicable Wage Order.

99.   Labor Code § 1194.2 entitles non-exempt employees to recover liquidated damages in amounts equal to the amounts of unpaid minimum wages and interest thereon in addition to the underlying unpaid minimum wages and interest thereon.

100.   Labor Code § 1197 makes it unlawful for an employer to pay an employee less than the minimum wage required under the applicable Wage Order for all hours worked during a payroll period.

101.   Labor Code § 1197.1 provides that it is unlawful for any employer or any other person acting either individually or as an officer, agent, or employee of another person to pay an employee, or cause an employee to be paid, less than the applicable minimum wage.

102.   Labor Code § 1198 makes it unlawful for employers to employ employees under conditions that violate the applicable Wage Order.

103.   Labor Code § 204 requires employers to pay non-exempt employees their earned wages for the normal work period at least twice during each calendar month on days the employer designates in advance and to pay non-exempt employees their earned wages for labor performed in excess of the normal work period by no later than the next regular payday.

104.   Labor Code § 223 makes it unlawful for employers to pay their employees lower wages than required by contract or statute while purporting to pay them legal wages.

105.   Labor Code § 510 and § 3 of the applicable Wage Order require employers to pay non-exempt employees overtime wages of no less than one and one-half times the employees' respective regular rates of pay for all hours worked in excess of eight hours in one workday, all hours worked in excess of forty hours in one workweek, and for the first eight hours worked on the seventh consecutive day of one workweek.

///

106.    Labor Code § 510 and § 3 of the applicable Wage Order also require employers to pay non-exempt employees overtime wages of no less than two times the employees' respective regular rates of pay for all hours worked in excess of twelve hours in one workday and for all hours worked in excess of eight hours on a seventh consecutive workday during the workweek.

107.    Plaintiffs are informed and believe that, at all relevant times, Defendant has applied centrally devised policies and practices to them and **Hourly Employee Class** members with respect to working conditions and compensation arrangements.

108.    At all relevant times, Defendant failed to pay hourly wages to Plaintiffs and **Hourly Employee Class** members for all time worked, including but not limited to, overtime hours at statutory and/or agreed rates.

109.    During the relevant time period, Defendant failed to pay Plaintiffs and **Hourly Employee Class** members all earned wages every pay period at the correct rates, including overtime rates, because Defendant directed, permitted, or otherwise encouraged Plaintiffs and **Hourly Employee Class** members to perform off-the-clock work.

110.    As a result of Defendant's unlawful conduct, Plaintiffs and **Hourly Employee Class** members have suffered damages in an amount subject to proof, to the extent they were not paid the full amount of wages earned during each pay period during the applicable limitations period, including overtime wages.

111.    Pursuant to Labor Code §§ 204, 218.6, 223, 510, 1194 and 1194.2, Plaintiffs, on behalf of themselves and **Hourly Employee Class** members, seek to recover unpaid straight time and overtime wages, interest thereon, and costs of suit.

112.    Pursuant to Labor Code § 1194, Code of Civil Procedure § 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiffs, on behalf of themselves and **Hourly Employee Class** members, seek to recover reasonable attorneys' fees.

///

## FIFTH CAUSE OF ACTION

**FAILURE TO PROVIDE ACCURATE WRITTEN WAGE STATEMENTS**

**(Lab. Code § 226)**

**(Garcia, Meza, and Wage Statement Penalties Sub-Class)**

113.    Garcia and Meza incorporate the preceding paragraphs as if fully alleged herein.

114.    Labor Code § 226(a) states:

An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total hours worked for each temporary services assignment.  The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.  For purposes of this subdivision, 'copy' includes a duplicate of the itemized statement provided to an employee or a computer-generated record that accurately shows all of the information required by this subdivision.

115.    The Division of Labor Standards Enforcement ("DLSE") has sought to harmonize the "detachable part of the check" provision and the "accurate itemized statement in writing" provision of Labor Code section 226(a) by allowing for electronic wage statements so long as each employee retains the right to elect to receive a written paper stub or record and that those who are provided with electronic wage statements retain the ability to easily access the information and convert the electronic statements

into hard copies at no expense to the employee. (DLSE Opinion Letter July 6, 2006.)

116.    Garcia and Meza are informed and believe that, at all relevant times during the applicable limitations period, Defendant has failed to provide **Wage Statement Penalties Sub-Class** members with written wage statements as described above.

117.    Garcia and Meza are informed and believe that Defendant's failure to provide them and **Wage Statement Penalties Sub-Class** members with accurate written wage statements were intentional in that Defendant had the ability to provide them with accurate wage statements but had intentionally provided them with written wage statements that Defendant knew do not comply with Labor Code § 226(a).

118.    Garcia and Meza and **Wage Statement Penalties Sub-Class** members have suffered injuries, in that Defendant have violated Plaintiffs' and **Wage Statement Penalties Sub-Class** members' legal rights to receive accurate wage statements and have misled them about their actual rates of pay and wages earned. In addition, inaccurate information on their wage statements have prevented immediate challenges to Defendant's unlawful pay practices, has required discovery and mathematical computations to determine the amount of wages owed, has caused difficulty and expense in attempting to reconstruct time and pay records, and/or has led to the submission of inaccurate information about wages and deductions to federal and state government agencies.

119.    Pursuant to Labor Code § 226(e), Garcia and Meza, on behalf of themselves and **Wage Statement Penalties Sub-Class** members, seek the greater of actual damages or fifty dollars ($50.00) for the initial pay period in which a violation of Labor Code section 226(a) occurred and one hundred dollars ($100.00) for each subsequent pay period in which a violation of Labor Code § 226(a) occurred, not to exceed an aggregate penalty of four thousand dollars ($4,000.00) per class member.

120.    Pursuant to Code of Civil Procedure § 1021.5, the substantial benefit doctrine and/or the common fund doctrine, Garcia and Meza, on behalf of themselves and **Wage Statement Penalties Sub-Class** members, seek awards of reasonable

attorneys' fees and costs.

## SIXTH CAUSE OF ACTION

### FAILURE TO TIMELY PAY ALL FINAL WAGES

### (Lab. Code §§ 201–203)

### (Garza, Garcia, and Waiting Time Penalties Sub-Class)

121.    Garza and Garcia incorporate the preceding paragraphs as if fully alleged herein.

122.    At all relevant times, Garza, Garcia, and **Waiting Time Penalties Sub-Class** members have been entitled, upon the end of their employment with Defendant, to timely payment of all wages earned and unpaid before termination or resignation.

123.    At all relevant times, pursuant to Labor Code § 201, employees who have been discharged have been entitled to payment of all final wages immediately upon termination.

124.    At all relevant times, pursuant to Labor Code § 202, employees who have resigned after giving at least seventy-two (72) hours' notice of resignation have been entitled to payment of all final wages at the time of resignation.

125.    At all relevant times, pursuant to Labor Code § 202, employees who have resigned after giving less than seventy-two (72) hours' notice of resignation have been entitled to payment of all final wages within seventy-two (72) hours' of giving notice of resignation.

126.    During the applicable limitations period, Defendant failed to pay Garza and Garcia all of their final wages in accordance with the Labor Code by failing to timely pay them all of their final wages.

127.    Garza and Garcia are informed and believe that, at all relevant times during the applicable limitations period, Defendant has failed to timely pay **Waiting Time Penalties Sub-Class** members all of their final wages in accordance with the Labor Code.

128.    Garza and Garcia are informed and believe that, at all relevant times during

the applicable limitations period, Defendant has maintained a policy or practice of paying **Waiting Time Penalties Sub-Class** members their final wages without regard to the requirements of Labor Code §§ 201 or 202 by failing to timely pay them all final wages.

129.    Garza and Garcia are informed and believe and thereupon allege that Defendant's failure to timely pay all final wages to them and **Waiting Time Penalties Sub-Class** members have been willful in that Defendant has the ability to pay final wages in accordance with Labor Code §§ 201 and/or 202 but have intentionally adopted policies or practices that are incompatible with those requirements.

130.    Pursuant to Labor Code §§ 203 and 218.6, Garza and Garcia, on behalf of themselves and **Waiting Time Penalties Sub-Class** members, seek waiting time penalties from the respective dates that their final wages had first become due until paid, up to a maximum of thirty days, and interest thereon.

131.    Pursuant to Labor Code § 226, Code of Civil Procedure § 1021.5, the substantial benefit doctrine and/or the common fund doctrine, Garza and Garcia, on behalf of themselves and **Waiting Time Penalties Sub-Class** members, seek awards of reasonable attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION
### UNFAIR COMPETITION
### (Bus. & Prof. Code §§ 17200 *et seq.*)
### (Plaintiffs and UCL Class)

132.    Plaintiffs incorporate the preceding paragraphs as if fully alleged herein.

133.    Business and Professions Code § 17200 defines "unfair competition" to include any unlawful business practice.

134.    Business and Professions Code §§ 17203–17204 allow a person who has lost money or property as a result of unfair competition to bring a class action in accordance with Code of Civil Procedure § 382 to recover money or property that may have been acquired from similarly situated persons by means of unfair competition.

135.    California law requires employers to pay hourly, non-exempt employees for all hours they are permitted or suffered to work, including hours that the employer knows or reasonably should know that employees have worked.

136.    Plaintiffs, on behalf of themselves and the **UCL Class** members, re-allege and incorporate the FIRST, SECOND, THIRD, FOURTH, and FIFTH causes of action herein.

137.    Plaintiffs lost money and/or property as a result of the aforementioned unfair competition.

138.    Defendant have or may have acquired money by means of unfair competition.

139.    Plaintiffs are informed and believe and thereupon allege that, by committing the Labor Code violations described in this Complaint, Defendant violated Labor Code §§ 215, 216, 225, 226.6, 354, 408, 553, 1175, 1199 and 2802. Defendant thus committed misdemeanors by violating the Labor Code as alleged herein.

140.    Defendant has committed criminal conduct through their policies and practices of, *inter alia*, failing to comport with their affirmative obligations as an employer to: provide non-exempt employees with uninterrupted, duty-free meal periods of at least thirty minutes for each work period of five or more hours, by failing to provide non-exempt employees with uninterrupted, duty-free rest periods of at least ten minutes for each work period of four hours or major fraction thereof, by failing to pay non-exempt employees for all hours worked, and by failing to reimburse them for all expenses.

141.    At all relevant times, Plaintiffs and **UCL Class** members have been non-exempt employees and entitled to the full protections of both the Labor Code and the applicable Wage Order.

142.    Defendant's unlawful conduct as alleged in this Complaint amounts to and constitutes unfair competition within the meaning of Business and Professions Code section 17200 *et sequitur*. Business and Professions Code §§ 17200 *et sequitur* protect

against unfair competition and allow a person who has suffered an injury-in-fact and has lost money or property as a result of an unfair, unlawful, or fraudulent business practice to seek restitution on behalf of themselves and on behalf of similarly situated persons in a class-action proceeding.

143.   As a result of Defendant's violations of the Labor Code during the applicable limitations period, Plaintiffs has suffered an injury-in-fact and has lost money or property in the form of earned wages.  Specifically, Plaintiffs has lost money or property as a result of Defendant's conduct.

144.   Plaintiffs are informed and believe that other similarly situated persons have been subject to the same unlawful policies or practices of Defendant.

145.   Due to the unfair and unlawful business practices in violation of the Labor Code, Defendant have gained a competitive advantage over other comparable companies doing business in the State of California that comply with their legal obligations.

146.   California's Unfair Competition Law ("UCL") permits civil recovery and injunctive relief for "any unlawful, unfair or fraudulent business act or practice," including a practice or act that violates, or is considered unlawful under, any other state or federal law.

147.   Accordingly, pursuant to Business & Professions Code §§ 17200 and 17203, Plaintiffs requests the issuance of temporary, preliminary, and permanent injunctive relief enjoining Defendant, and each of them, and their agents and employees, from further violations of the Labor Code and applicable Industrial Welfare Commission Wage Orders, and upon a final hearing, an order permanently enjoining Defendant, and each of them, and their respective agents and employees, from further violations of the Labor Code and applicable Industrial Welfare Commission Wage Orders.

148.   Pursuant to Business and Professions Code § 17203, Plaintiffs, on behalf of themselves and **UCL Class** members, seek declaratory relief and restitution of all monies rightfully belonging to them that Defendant did not pay them or otherwise

retained by means of its unlawful and unfair business practices.

149.    Pursuant to Code of Civil Procedure § 1021.5, the substantial benefit doctrine and/or the common fund doctrine, Plaintiffs and **UCL Class** members are entitled to recover reasonable attorneys' fees in connection with their unfair competition claims.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, all others similarly situated, pray for relief and judgment against Defendant as follows:

(1)    An order that the action be certified as a class action;

(2)    An order that Plaintiffs be appointed class representatives;

(3)    An order that counsel for Plaintiffs be appointed class counsel;

(4)    Unpaid wages;

(5)    Actual damages;

(6)    Liquidated damages;

(7)    Restitution;

(8)    Declaratory relief;

(9)    Pre-judgment interest;

(10)    Statutory penalties;

(11)    Costs of suit;

(12)    Reasonable attorneys' fees; and

(13)    Such other relief as the Court deems just and proper.

///

///

///

///

///

///

///

CONSOLIDATED CLASS ACTION COMPLAINT

1

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a jury trial on all issues so triable.

Respectfully submitted,

Dated: June 1, 2023          SETAREH LAW GROUP

                                     /s/ Jose Maria D. Patino, Jr.
                                     SHAUN SETAREH
                                     JOSE MARIA D. PATINO, JR.
                                     TYSON GIBB
                                     Attorneys for Plaintiff
                                     JUAN GARZA

Dated: June 1, 2023          DAVID YEREMIAN & ASSOCIATES, INC.

                                     /s/ Roman Shkodnik
                                     DAVID YEREMIAN
                                     ROMAN SHKODNIK
                                     Attorneys for Plaintiff
                                     JUAN GARZA

Dated: June 1, 2023          LAVI & EBRAHIMIAN, LLP

                                     /s/ Vincent C. Granberry
                                     JOSEPH LAVI
                                     VINCENT C. GRANBERRY
                                     DANIELLE E. MONTERO
                                     Attorneys for Plaintiff
                                     FRANCISCO J. MEZA