1  Shaun Setareh (SBN 204514)
   shaun@setarehlaw.com
2  Jose Maria D. Patino, Jr. (SBN 270194)
   jose@setarehlaw.com
3  Tyson Gibb (SBN 339154)
   tyson@setarehlaw.com
4  SETAREH LAW GROUP
   9665 Wilshire Boulevard, Suite 430
5  Beverly Hills, California 90212
   Telephone (310) 888-7771
6  Facsimile (310) 888-0109

7  Attorneys for Plaintiff JUAN GARZA

8  [*Additional Counsel on next page*]

9          **UNITED STATES DISTRICT COURT**

10         **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 11  JUAN GARZA, GABRIEL GARCIA, and FRANCISCO J. MEZA on behalf of themselves and all others similarly situated, | Case No. 2:22-cv-06223-PSG-E |
| | **CLASS ACTION** |
| | **FOURTH CONSOLIDATED COMPLAINT** |
| *Plaintiffs*, | |
| v. | 1. Failure to Provide Meal Periods (Lab. Code §§ 226.7 and 512) |
| SWIFT BEEF COMPANY, a Delaware corporation, | 2. Failure to Provide Rest Periods (Lab. Code § 226.7) |
| *Defendant*. | 3. Failure to Pay Minimum Wages (Lab. Code §§ 1194, 1194.2, and 1197) |
| | 4. Failure to Pay Overtime Wages (Lab. Code § 510) |
| | 5. Failure to Provide Accurate Written Wage Statements (Lab. Code § 226(a)) |
| | 6. Failure to Timely Pay All Final Wages (Lab. Code §§ 201, 202 and 203) |
| | 7. Civil Penalties (Lab. Code § 2698, *et seq.*) |
| | **JURY TRIAL DEMANDED** |

D.LAW, INC.
Emil Davtyan (SBN 299363)
Emil@d.law
Roman Shkodnik (SBN 285152)
r.shkodnik@d.law
Robert Payaslyan (SBN 340331)
r.payaslyan@d.law
880 E Broadway
Glendale, CA 91205
Telephone: (818) 962-6465
Fax: (818) 962-6469

DAVID YEREMIAN & ASSOCIATES, INC.
David Yeremian (SBN 226337)
david@yeremianlaw.com
880 E Broadway
Glendale, CA 91205
Telephone: (818) 962-6465
Fax: (818) 962-6469

Attorneys for Plaintiff GABRIEL GARCIA


Joseph Lavi, Esq. (SBN 209776)
Vincent C. Granberry, Esq. (SBN 276483)
Cassandra A. Castro, Esq. (SBN 334238)
LAVI & EBRAHIMIAN, LLP
8889 W. Olympic Boulevard, Suite 200
Beverly Hills, California 90211
Telephone: (310) 432-0000
Facsimile: (310) 432-0001
Email: jlavi@lelawfirm.com
vgranberry@lelawfirm.com
ccastro@lelawfirm.com
WHT2@lelawfirm.com

Attorneys for Plaintiff FRANCISCO J. MEZA

Plaintiffs JUAN GARZA ("Garza"), GABRIEL GARCIA ("Garcia"), and FRANCISCO J. MEZA ("Meza") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, complain and allege as follows:

## INTRODUCTION

1.    Plaintiffs bring this class action against Defendant SWIFT BEEF COMPANY ("Defendant"), a Delaware corporation, for alleged violations of the Labor Code. As set forth below, Plaintiffs allege that Defendant has

(1)    failed to provide Plaintiffs and all other similarly situated individuals with meal periods;

(2)    failed to provide them with rest periods;

(3)    failed to pay them premium wages for missed meal and/or rest periods;

(4)    failed to pay them premium wages for missed meal and/or rest periods at the regular rate of pay;

(5)    failed to pay them at least minimum wage for all hours worked;

(6)    failed to pay them overtime wages at the correct rate;

(7)    failed to pay them double time wages at the correct rate;

(8)    failed to provide them with accurate written wage statements; and

(9)    failed to pay them all of their final wages following separation of employment.

2.    Based on these alleged violations, Plaintiffs now bring this class action to recover unpaid wages, restitution, and statutory penalties, and related relief on behalf of themselves and all others similarly situated.

## JURISDICTION AND VENUE

3.    This Court has original subject matter jurisdiction over Plaintiffs' claims pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. sections 1332(d) and 1453, which grants district courts original jurisdiction over class actions in which the amount in controversy exceeds $5,000,000, there are at least 100 members in the putative class, and any member of the putative class of

plaintiffs is a citizen of a State different from any defendant.  Further, pursuant to 28 U.S.C. § 1332(a)(1), this Court has original jurisdiction over this matter because it is a civil action between citizens of different States where the matter in controversy exceeds the sum or value of $75,000.

4.     Venue is proper in this District under 28 U.S.C. section 1391(b)(2) and (c) because a substantial part of the events and omissions giving rise to the claims alleged in this complaint occurred in this District.

5.     This Court has personal jurisdiction over this matter because Defendant conducts substantial business activity in this District, and because many of the unlawful acts described in this complaint occurred in this District and gave rise to the claims alleged.

## PARTIES

6.     Plaintiffs JUAN GARZA, GABRIEL GARCIA, and FRANCISCO J. MEZA are and were, and at all relevant times mentioned herein, individuals residing in the State of California.

7.     Plaintiffs are informed and believe, and thereupon allege, that Defendant SWIFT BEEF COMPANY is, and at all relevant times mentioned herein, a Delaware corporation doing business in the State of California.

## CLASS ALLEGATIONS

8.     This action has been brought and may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3), because there is a well-defined community of interest among the persons who comprise the readily ascertainable classes defined below and because Plaintiffs are unaware of any difficulties likely to be encountered in managing this case as a class action.

9.     **Relevant Time Period**: The Relevant Time Period is defined as the time period beginning four years prior to the filing of this action until judgment is entered, excluding any time period already released.

**Hourly Employee Class**: All persons employed by Defendant, whether directly or through any staffing agencies and/or any other third parties, in hourly or non-exempt positions in California at any time during the **Relevant Time Period**.

> **Minimum Wage Sub-Class**: All **Hourly Employee Class** members who were not paid at least minimum wage for all time they were subject to Defendant's control at any time during the **Relevant Time Period**.

> **Meal Period Sub-Class**: All **Hourly Employee Class** members who worked in a shift in excess of five hours at any time during the **Relevant Time Period**.

> **Rest Period Sub-Class**: All **Hourly Employee Class** members who worked a shift of at least three and one-half (3.5) hours at any time during the **Relevant Time Period**.

> **Wage Statement Penalties Sub-Class**: All **Hourly Employee Class** members employed by Defendant in California at any time during the period beginning one year before the filing of this action and ending when final judgment is entered, excluding any time period already released.

> **Waiting Time Penalties Sub-Class**: All **Hourly Employee Class** members who separated from their employment with Defendant at any time during the period beginning three years before the filing of this action and ending when final judgment is entered, excluding any time period already released.

10. **Reservation of Rights**: Plaintiffs reserve the right to amend or modify the class definitions with greater specificity by further division into sub-classes and/or by limitation to particular issues.

11. **Numerosity**: The class members are so numerous that the individual joinder of each individual class member is impractical. While Plaintiffs do not currently know the exact number of class members, Plaintiffs are informed and believe, and thereupon allege, that the actual number exceeds the minimum required for numerosity under federal law.

12. **Commonality and Predominance:** Common questions of law and fact exist as to all class members and predominate over any questions that affect only individual class members. These common questions include, but are not limited to:

i. Whether Defendant maintained a policy or practice of failing to provide employees with their meal periods in accordance with California law;

ii. Whether Defendant maintained a policy or practice of failing to provide employees with their rest periods in accordance with California law;

iii. Whether Defendant failed to pay premium wages to class members when they have not been provided with required meal and/or rest periods in accordance with California law;

iv. Whether Defendant failed to pay minimum and/or overtime wages to class members as a result of policies that fail to provide meal periods in accordance with California law;

v. Whether Defendant failed to pay minimum and/or overtime wages to class members for all time worked in accordance with California law;

vi. Whether Defendant failed to provide class members with accurate written wage statements as a result of providing them with written wage statements with inaccurate entries for, among other things, amounts of gross and net wages, and total hours worked, in accordance with California law;

vii. Whether Defendant applied policies or practices that result in late and/or incomplete final wage payments;

viii. Whether Defendant is liable to class members for waiting time penalties under Labor Code section 203;

ix. Whether Defendant is liable for penalties under Labor Code section 2699, *et seq*;

13. **Typicality:** Plaintiffs' claims are typical of the other class members' claims. Plaintiffs are informed and believe, and thereupon allege, that Defendant has a policy or practice of failing to comply with the Labor Code and Business and Professions Code as alleged in this Complaint.

14. **Adequacy of Class Representatives:** Plaintiffs are adequate class representatives in that they have no interests that are adverse to or otherwise conflict with the interests of absent class members and are dedicated to vigorously

prosecuting this action on their behalf. Plaintiffs will fairly and adequately represent and protect the interests of the other class members.

15. **Adequacy of Class Counsel:** Plaintiffs' counsel are adequate class counsel in that they have no known conflicts of interest with Plaintiffs or absent class members, are experienced in wage and hour class action litigation, and are dedicated to vigorously prosecuting this action on behalf of Plaintiffs and absent class members.

16. **Superiority:** A class action is vastly superior to other available means for fair and efficient adjudication of the class members' claims and would be beneficial to the parties and the Court. Class action treatment will allow a number of similarly situated persons to prosecute their common claims simultaneously and efficiently in a single forum without the unnecessary duplication of effort and expense that numerous individual actions would entail. In addition, the monetary amounts due to many individual class members are likely to be relatively small and would thus make it difficult, if not impossible, for individual class members to both seek and obtain relief. Moreover, a class action will serve an important public interest by permitting class members to effectively pursue the recovery of monies owed to them. Further, a class action will prevent the potential for inconsistent or contradictory judgments inherent in individual litigation.

## GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

17. Garza worked for Defendant as an hourly, non-exempt employee in California from approximately November 4, 2019, through April 14, 2021. Garza typically worked over eight (8) hours per workday and over forty (40) hours per workweek.

18. Garcia worked for Defendant as an hourly, non-exempt employee in California from approximately January 13, 2022, through June 7, 2022. Garcia typically worked over eight (8) hours per workday and over forty (40) hours per workweek.

19.     Meza worked for Defendant directly as an hourly, non-exempt employee in California from approximately August 2020 through July 7, 2023. Prior to approximately August 2020, Meza performed work for Defendant through a staffing agency as an hourly, non-exempt employee in California for approximately 8 months before becoming a direct hire of Defendant. Meza typically worked over eight (8) hours per workday and over forty (40) hours per workweek.

### Donning and Doffing Protective Gear

20.     During the applicable limitations period, Plaintiffs and the putative class were required to don and doff protective gear—specifically, gloves, a hairnet, and coat—because they directly handled, cut, and processed raw meat or worked in the area where raw meat was handled, cut, and processed.

21.     This protective gear was handed out to employees by a few designated personnel, usually cleaning crew, at a single counter where supplies were kept.  If there were not enough supplies, employees would have to wait a few extra minutes for the cleaning crew to bring new supplies to hand out.

22.     Before entering a work area, an employee would have to go to the single supply counter where protective gear was issued, wait for the personnel assigned there to provide him or her with a complete set of protective gear, don the protective gear, and—if starting the shift or returning from a meal period—clock in and be present at their workstation by the time their meal period was set to end. A supervisor would be monitoring at the work area for anyone not present at the time the meal period was set to end, and anyone not timely present would be subject to discipline.

23.     When leaving the work area for a break, for a meal period, or at the end of a shift, an employee would first have to go to the locker room to remove and dispose of their protective gear, and then—if ending the shift or going on a meal period—clock out.

24.     The time spent retrieving and donning this protective gear was time spent under the control of Defendant, and such time is, thus, compensable under

California law. To the extent such time was incurred but not recorded and paid for, Defendant has failed to pay Plaintiffs and the putative class all wages owed.

25.     Garza was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant, including, for instance, on shifts during the pay period ending April 11, 2021, including but not limited to shifts where Garza worked more than 8 hours in a workday.

26.     Garcia was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant, including, for instance, on shifts during the pay period ending June 7, 2022, including but not limited to shifts where Garcia worked more than 8 hours in a workday.

27.     Meza was subjected to the donning and doffing practice on all shifts he worked as a non-exempt employee of Defendant, including, for instance, on shifts during the pay period ending March 6, 2022, including but not limited to shifts where Meza worked more than 8 hours in a workday.

## Cell Phone/Walkie-Talkie Usage (Off-the-Clock)

28.     During the applicable limitations period, Garza, Meza, and the putative class members were required to utilize their personal cellphones or keep their employer-issued walkie-talkies on their person, monitored, and to respond to calls received on them at all times during their shift, including while off-the-clock during their meal breaks, to communicate with management about work-related questions and issues. Garza, Meza, and the putative class members would spend several minutes per week utilizing their personal cellphones to answer work-related questions from managers.

29.     Defendant did not pay wages or otherwise compensate Garza, Meza, or putative class members for this time worked.

30.     Defendant's practices, including the facts stated above and herein, have resulted in substantial amounts of time not recorded as hours worked that have resulted in Defendant's failure to pay substantial amounts of earned wages to Garza,

Meza, and the putative class.

31. Garza was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant, including, for instance, on shifts during the pay period ending April 11, 2021, including but not limited to shifts where Garza worked more than 8 hours in a workday.

32. Meza was subjected to this practice, specifically as to walkie-talkies, on all shifts he worked as a direct non-exempt employee of Defendant, including, for instance, on shifts during the pay period ending March 6, 2022, including but not limited to shifts where Meza worked more than 8 hours in a workday.

## **COVID-19 Check and Insufficient Time Clocks (Off-the-Clock)**

33. Since the Outbreak of COVID-19, Plaintiffs and the putative class were required to utilize the general entrance to the workplace and were required to line up to wait to undergo and undergo off-the-clock COVID-19 temperature checks.

34. Plaintiffs and the putative class were not paid for this time resulting in Defendant's failure to pay minimum wage for all the hours Plaintiffs and the putative class worked.

35. Plaintiffs and the putative class were required to spend a few minutes each time they went through the COVID-19 check—time for which they were not paid by Defendant.

36. Plaintiffs and the putative class were required to go through the COVID-19 check prior to clocking in at the beginning of each work shift.

37. Plaintiffs and the putative class members were required to wait in line for up to five minutes before they were able to clock back in from their meal breaks due to Defendant not having enough time clocks available.

38. Based on the above, Defendant's COVID-19 check practices have resulted in substantial amounts of time not recorded as hours worked, resulting in substantial amounts of wages not paid to Plaintiffs and the putative class.

/ / /

39.     Garza was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant, since the COVID-19 temperature checks were implemented, including, for instance, on shifts during the pay period ending April 11, 2021, including but not limited to shifts where Garza worked more than 8 hours in a workday.

40.     Garcia was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant since the COVID-19 temperature checks were implemented, including, for instance, on shifts during the pay period ending June 7, 2022, including but not limited to shifts where Garcia worked more than 8 hours in a workday.

41.     Meza was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant since the COVID-19 temperature checks were implemented, including, for instance, on shifts during the pay period ending March 6, 2022, including but not limited to shifts where Meza worked more than 8 hours in a workday.

## **Missed and/or Shortened Meal Periods**

42.     During the applicable limitations period, Plaintiffs and the putative class members were not provided with meal periods of at least thirty (30) minutes for each five (5) hour work period due to chronically understaffing each work shift with not enough workers and imposing so much work on each employee such that it made it unlikely that an employee would be able to take their breaks within five hours if they wanted to finish their work on time. Plaintiffs and the putative class were also not provided with meal periods of at least 30 minutes for each 5 hour period due to donning and doffing protective gear as described in paragraphs 20-24 and interruptions by their managers and/or supervisors with work-related questions.

43.     Defendant had a policy and practice of providing only 30 minutes each shift for a meal period, the start and end of which were monitored by supervisors. After the meal period started, Plaintiffs and putative class members would have to go

to the locker room to remove and dispose of their protective gear and then clock out for lunch. When the meal period ended, employees were required to be back at their workstations and ready to work, or they would be disciplined for tardiness. Therefore, prior to returning to work, they would have to go to the single supply counter and wait for the personnel assigned there to provide them with sets of protective gear, don the protective gear, then clock in from the meal period, and be back at their workstation by the end of the meal period exactly 30 minutes after the meal period began.

44.     Defendant failed to provide Garza, Meza, and putative class members duty-free meal breaks due to Defendant requiring Garza, Meza, and putative class members to keep their employer-issued walkie-talkies on their person, monitored, and to respond to calls received on them while off-the-clock during their meal breaks.

45.     As a result of Defendant's policy, Plaintiffs and the putative class were regularly not provided with uninterrupted meal periods of at least thirty (30) minutes for each five (5) hours worked due to Defendant's understaffing and productivity requirements. Plaintiffs and the putative class were also not provided with uninterrupted meal periods of at least 30 minutes for each 5 hours worked due to Defendant's requirements relating to donning and doffing protective gear and keeping employer-issued walkie-talkies on their person.

46.     Garza was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant, including, for instance, on shifts during the pay period ending April 11, 2021, including but not limited to shifts where Garza worked more than 8 hours in a workday.

47.     Garcia was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant, including, for instance, on shifts during the pay period ending June 7, 2022, including but not limited to shifts where Garcia worked more than 8 hours in a workday.

/ / /

48.     Meza was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant, including, for instance, on shifts during the pay period ending March 6, 2022, including but not limited to shifts where Meza worked more than 8 hours in a workday.

**Missed Rest Periods**

49.     Plaintiffs and the putative class were not provided with rest periods of at least ten (10) minutes for each four (4) hour work period, or major fraction thereof, due to (1) Defendant's policy of not scheduling each rest period as part of each work shift; (2) chronically understaffing each work shift with not enough workers; and (3) imposing so much work on each employee such that it made it unlikely that an employee would be able to take their breaks if they wanted to finish their work on time. Plaintiffs and the putative class were also not provided with rest periods of at least 10 minutes for each four-hour work period or major fraction thereof due to donning and doffing protective gear when leaving and returning from rest breaks in line with the process described in paragraphs 20-24.

50.     Plaintiffs and the putative class members would have their rest breaks constantly interrupted by their managers and/or supervisors with work-related questions.

51.     As a result of Defendant's policy, Plaintiffs and the putative class were regularly not provided with uninterrupted rest periods of at least ten (10) minutes for each four (4) hours worked due to complying with Defendant's productivity requirements that required Plaintiffs and the putative class to work through their rest periods in order to complete their assignments on time. Plaintiffs and the putative class were also regularly not provided with uninterrupted rest periods due to Defendant's requirements relating to donning and doffing protective gear, which also prevented them from being able to leave the premises during any rest periods. Garza, Meza, and the putative class were also regularly not provided with uninterrupted and complete rest periods due to Defendant's requirement that they keep employer-issued

walkie-talkies on their person.

52.   Garza was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant, including, for instance, on shifts during the pay period ending April 11, 2021.

53.   Garcia was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant, including, for instance, on shifts during the pay period ending June 7, 2022.

54.   Meza was subjected to this practice on all shifts he worked as a non-exempt employee of Defendant, including, for instance, on shifts during the pay period ending March 6, 2022.

**<u>Inaccurate Wage Statements</u>**

55.   Plaintiffs and the putative class were not provided with accurate wage statements as mandated by law pursuant to Labor Code § 226.

56.   Defendant failed to comply with Labor Code section 226(a)(1) as "gross wages earned" were not accurately reflected in that all hours worked, including overtime, were not included.

57.   Defendant failed to comply with Labor Code section 226(a)(2) as "total hours worked by the employee" were not accurately reflected in that all hours worked, including overtime, were not included.

58.   Defendant failed to comply with Labor Code section 226(a)(5) as "net wages earned" were not accurately reflected in that all hours worked, including overtime, were not included.

59.   Defendant failed to comply with Labor Code section 226(a)(9) as "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee" were not accurately reflected in that all hours worked, including overtime, were not included.

/ / /

/ / /

**Timeliness of Wage Payments**

60. Defendants' failure to pay compensation in a timely fashion also constituted a violation of Labor Code § 204, which requires that all wages shall be paid semimonthly. Due to Defendant's failure to pay all wages due and owing to Plaintiffs and the putative class for off-the-clock work, Defendant's failed to timely pay all earned wages due to Plaintiffs and the putative class twice during each calendar month. Similarly, Defendants failed to pay all wages due and owing to Plaintiffs and the putative class for deficiently provided meal and rest breaks, resulting in Defendant's untimely payment of all earned wages due to Plaintiffs and the putative class twice during each calendar month.

## FIRST CAUSE OF ACTION

### FAILURE TO PROVIDE MEAL PERIODS

### (Lab. Code §§ 226.7 and 512)

### (Plaintiffs and Meal Period Sub-Class)

61. Plaintiffs incorporate by reference the preceding paragraphs as if fully alleged herein.

62. At all relevant times, Plaintiffs and the **Meal Period Sub-Class** members have been non-exempt employees of Defendant entitled to the full meal period protections of both the Labor Code and the applicable Industrial Welfare Commission Wage Order ("Wage Order").

63. Labor Code § 512 and § 11 of the applicable Wage Order impose an affirmative obligation on employers to provide non-exempt employees with uninterrupted, duty-free meal periods of at least thirty minutes for each work period of five hours, and to provide them with two uninterrupted, duty-free meal periods of at least thirty minutes for each work period of ten hours.

64. Labor Code § 226.7 and § 11 of the applicable Wage Order both prohibit employers from requiring employees to work during required meal periods and require employers to pay non-exempt employees an hour of premium wages on each

workday that the employee is not provided with the required meal period.

65. Compensation for missed meal periods constitutes wages within the meaning of Labor Code § 200.

66. Section 11 of the applicable Wage Order states:
No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and employee. Unless the employee is relieved of all duty during a 30 minute meal period, the meal period shall be considered an "on duty" meal period and counted as time worked. An "on duty" meal period shall be permitted only when the nature of the work prevents an employee from being relieved of all duty and when by written agreement between the parties an on-the-job paid meal period is agreed to. The written agreement shall state that the employee may, in writing, revoke the agreement at any time.

67. At all relevant times, Plaintiffs were not subject to a valid on-duty meal period agreement. Plaintiffs are informed and believe that, at all relevant times, **Meal Period Sub-Class** members were not subject to valid on-duty meal period agreements with Defendant.

68. Plaintiffs allege that, at all relevant times during the applicable limitations period, Defendant maintained a policy or practice of not providing Plaintiffs and members of the **Meal Period Sub-Class** with uninterrupted, duty-free meal periods for at least thirty (30) minutes for each five (5) hour work period, as required by Labor Code § 512 and the applicable Wage Order.

69. Plaintiffs allege that, at all relevant times during the applicable limitations period, Defendant maintained a policy or practice of failing to pay premium wages to **Meal Period Sub-Class** members when they worked five (5) hours without clocking out for any meal period.

70. At all relevant times, Defendant failed to pay Plaintiffs and the **Meal Period Sub-Class** members additional premium wages, and/or were not paid premium wages at the employees' regular rates of pay when required meal periods were not provided.

/ / /

71.     Pursuant to Labor Code § 226.7 and the California Constitution, Art XV, § 1, Plaintiffs, on behalf of themselves and the **Meal Period Sub-Class** members, seek to recover unpaid premium wages, interest thereon, and costs of suit.

72.     Pursuant to Labor Code § 1194, Code of Civil Procedure § 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiffs, on behalf of themselves and the **Meal Period Sub-Class** members, seeks to recover reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

## FAILURE TO PROVIDE REST PERIODS

## (Lab. Code § 226.7)

## (Plaintiffs and Rest Period Sub-Class)

73.     Plaintiffs incorporate the preceding paragraphs as if fully alleged herein.

74.     At all relevant times, Plaintiffs and the **Rest Period Sub-Class** members have been non-exempt employees of Defendant entitled to the full rest period protections of both the Labor Code and the applicable Wage Order.

75.     Section 12 of the applicable Wage Order imposes an affirmative obligation on employers to permit and authorize employees to take required rest periods at a rate of no less than ten minutes of net rest time for each four-hour work period, or major fraction thereof, that must be in the middle of each work period insofar as practicable.

76.     Labor Code § 226.7 and § 12 of the applicable Wage Order both prohibit employers from requiring employees to work during required rest periods and require employers to pay non-exempt employees an hour of premium wages at the employees' regular rates of pay, on each workday that the employee is not provided with the required rest period(s).

77.     Compensation for missed rest periods constitutes wages within the meaning of Labor Code § 200.

/ / /

78.     Plaintiffs allege that, at all relevant times during the applicable limitations period, Defendant maintained a policy or practice of not providing members of the **Rest Period Sub-Class** with net rest period of at least ten minutes for each four-hour work period, or major fraction thereof, as required by the applicable Wage Order.

79.     At all relevant times, Defendant failed to pay Plaintiffs and the **Rest Period Sub-Class** members additional premium wages when required rest periods were not provided.

80.     Pursuant to Labor Code § 226.7 and California Constitution Art. XV, § 1, Plaintiffs, on behalf of themselves and **Rest Period Sub-Class** members, seeks to recover unpaid premium wages, interest thereon, and costs of suit.

81.     Pursuant to Labor Code § 1194, Code of Civil Procedure § 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiffs, on behalf of themselves and **Rest Period Sub-Class** members, seeks to recover reasonable attorneys' fees.

## THIRD CAUSE OF ACTION

### FAILURE TO PAY MINIMUM WAGES

### (Lab. Code §§ 1194, 1194.2, and 1197)

### (Plaintiffs and Hourly Employee Class)

82.     Plaintiffs re-allege and incorporate all preceding paragraphs, as though set forth in full herein.

83.     Defendant failed to pay Plaintiffs and **Hourly Employee Class** members minimum wages for all hours worked. Defendant had a consistent policy of misstating employees' time records and failing to pay employees for all hours worked. Specifically, Defendant had a consistent policy of failing to pay employees for hours worked during alleged meal periods for which employees were consistently denied. (*See infra*). California Labor Code § 1197, entitled "Pay of Less Than Minimum Wage" states:

The minimum wage for employees fixed by the commission is the minimum wage to be paid to employees, and the payment of a less wage than the minimum so fixed is unlawful.

84.     The applicable minimum wages fixed by the commission for work during the relevant period is found in the Wage Orders. Pursuant to the Wage Orders, Plaintiffs and **Hourly Employee Class** members are therefore entitled to double the minimum wage during the relevant period.

85.     The minimum wage provisions of California Labor Code are enforceable by private civil action pursuant to California Labor Code § 1194(a) which states:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees                        and                        costs                        of                        suit.

86.     As described in California Labor Code §§ 1185 and 1194.2, any action for wages incorporates the applicable Wage Order of the California Industrial Welfare Commission.

87.     California Labor Code § 1194.2 also provides for the following remedies:

In any action under Section 1194 . . . to recover wages because of the payment of a wage less than the minimum wages fixed by an order of the commission, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

88.     Defendant has the ability to pay minimum wages for all time worked and have willfully refused to pay such wages with the intent to secure for Defendant a discount upon this indebtedness with the intent to annoy, harass, oppress, hinder, delay, or defraud employees.

89.     Wherefore, employees are entitled to recover the unpaid minimum wages (including double minimum wages), liquidated damages in an amount equal to

the minimum wages unlawfully unpaid, interest thereon and reasonable attorney's fees and costs of suit pursuant to California Labor Code § 1194(a).

## FOURTH CAUSE OF ACTION

**FAILURE TO PAY HOURLY AND OVERTIME WAGES**

**(Lab. Code §§ 510, 1194, and 1197)**

**(Plaintiffs and Hourly Employee Class)**

90.     Plaintiffs incorporate the preceding paragraphs as if fully alleged herein.

91.     At all relevant times, Plaintiffs and **Hourly Employee Class** members are or have been non-exempt employees of Defendant entitled to the full protections of the Labor Code and the applicable Wage Order.

92.     Section 2 of the applicable Wage Order defines "hours worked" as "the time during which an employee is subject to the control of the employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

93.     Section 4 of the applicable Wage Order requires an employer to pay non-exempt employees at least the minimum wage set forth therein for all hours worked, which consists of all hours that an employer has actual or constructive knowledge that employees are working.

94.     Labor Code § 1194 invalidates any agreement between an employer and an employee to work for less than the minimum or overtime wage required under the applicable Wage Order.

95.     Labor Code § 1194.2 entitles non-exempt employees to recover liquidated damages in amounts equal to the amounts of unpaid minimum wages and interest thereon in addition to the underlying unpaid minimum wages and interest thereon.

96.     Labor Code § 1197 makes it unlawful for an employer to pay an employee less than the minimum wage required under the applicable Wage Order for all hours worked during a payroll period.

18

97.    Labor Code § 510 and § 3 of the applicable Wage Order require employers to pay non-exempt employees overtime wages of no less than one and one-half times the employees' respective regular rates of pay for all hours worked in excess of eight hours in one workday, all hours worked in excess of forty hours in one workweek, and for the first eight hours worked on the seventh consecutive day of one workweek.

98.    Labor Code § 510 and § 3 of the applicable Wage Order also require employers to pay non-exempt employees overtime wages of no less than two times the employees' respective regular rates of pay for all hours worked in excess of twelve hours in one workday and for all hours worked in excess of eight hours on a seventh consecutive workday during the workweek.

99.    Plaintiffs are informed and believe that, at all relevant times, Defendant has applied centrally devised policies and practices to them and **Hourly Employee Class** members with respect to working conditions and compensation arrangements.

100.    At all relevant times, Defendant failed to pay hourly wages to Plaintiffs and **Hourly Employee Class** members for all time worked, including but not limited to, overtime hours at statutory and/or agreed rates.

101.    During the relevant time period, Defendant failed to pay Plaintiffs and **Hourly Employee Class** members all earned wages every pay period at the correct rates, including overtime rates, because Defendant directed, permitted, or otherwise encouraged Plaintiffs and **Hourly Employee Class** members to work through meal breaks. Defendant also failed to pay Plaintiffs, and **Hourly Employee Class** members all earned wages every pay period due to its policies requiring and/or permitting off-the-clock work.

102.    As a result, Plaintiffs and **Hourly Employee Class** members regularly worked over eight hours per workday and over forty hours per workweek due to the off-the-clock work performed in addition to their regularly scheduled shifts.

/ / /

103.    As a result of Defendant's unlawful conduct, Plaintiffs and **Hourly Employee Class** members have suffered damages in an amount subject to proof, to the extent they were not paid the full amount of wages earned during each pay period during the applicable limitations period, including overtime wages.

104.    Pursuant to Labor Code §§ 218.6, 510, 1194 and 1194.2, Plaintiffs, on behalf of themselves and **Hourly Employee Class** members, seeks to recover unpaid straight time and overtime wages, interest thereon, and costs of suit.

105.    Pursuant to Labor Code § 1194, Code of Civil Procedure § 1021.5, the substantial benefit doctrine, and/or the common fund doctrine, Plaintiffs, on behalf of themselves and **Hourly Employee Class** members, seek to recover reasonable attorneys' fees.

## FIFTH CAUSE OF ACTION

### FAILURE TO PROVIDE ACCURATE WRITTEN WAGE STATEMENTS

### (Lab. Code § 226)

### (Garcia, Meza, and Wage Statement Penalties Sub-Class)

106.    Garcia and Meza incorporate the preceding paragraphs as if fully alleged herein.

107.    Labor Code § 226(a) states:
An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately if wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee and, beginning July 1, 2013, if the employer is a temporary services employer as defined in Section 201.3, the rate of pay and the total

hours worked for each temporary services assignment. The deductions made from payment of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement and the record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California. For purposes of this subdivision, 'copy' includes a duplicate of the itemized statement provided to an employee or a computer-generated record that accurately shows all of the information required by this subdivision.

108. The Division of Labor Standards Enforcement ("DLSE") has sought to harmonize the "detachable part of the check" provision and the "accurate itemized statement in writing" provision of Labor Code section 226(a) by allowing for electronic wage statements so long as each employee retains the right to elect to receive a written paper stub or record and that those who are provided with electronic wage statements retain the ability to easily access the information and convert the electronic statements into hard copies at no expense to the employee. (DLSE Opinion Letter July 6, 2006.)

109. Garcia and Meza are informed and believe that, at all relevant times during the applicable limitations period, Defendant has failed to provide **Wage Statement Penalties Sub-Class** members with written wage statements because of Defendant's failure to pay all wages due for off-the-clock work, overtime, and deficient meal and rest breaks as described above. Defendant's failure to pay such wages resulted in **Wage Statement Penalties Sub-Class** members receiving inaccurate written wage statements from Defendant.

110. Garcia and Meza are informed and believe that Defendant's failure to provide them and **Wage Statement Penalties Sub-Class** members with accurate written wage statements were intentional in that Defendant had the ability to provide them with accurate wage statements but had intentionally provided them with written wage statements that Defendant knew do not comply with Labor Code § 226(a).

111. Garcia and Meza and **Wage Statement Penalties Sub-Class** members have suffered injuries, in that Defendant have violated Garcia, Meza, and **Wage Statement Penalties Sub-Class** members' legal rights to receive accurate wage

statements and have misled them about their actual rates of pay and wages earned. In addition, inaccurate information on their wage statements have prevented immediate challenges to Defendant's unlawful pay practices, has required discovery and mathematical computations to determine the amount of wages owed, has caused difficulty and expense in attempting to reconstruct time and pay records, and/or has led to the submission of inaccurate information about wages and deductions to federal and state government agencies.

112.    Pursuant to Labor Code § 226(e), Garcia and Meza, on behalf of themselves and **Wage Statement Penalties Sub-Class** members, seek the greater of actual damages or fifty dollars ($50.00) for the initial pay period in which a violation of Labor Code section 226(a) occurred and one hundred dollars ($100.00) for each subsequent pay period in which a violation of Labor Code § 226(a) occurred, not to exceed an aggregate penalty of four thousand dollars ($4,000.00) per class member.

113.    Pursuant to Code of Civil Procedure § 1021.5, the substantial benefit doctrine and/or the common fund doctrine, Garcia and Meza, on behalf of themselves and **Wage Statement Penalties Sub-Class** members, seek awards of reasonable attorneys' fees and costs.

<u>**SIXTH CAUSE OF ACTION**</u>

**FAILURE TO TIMELY PAY ALL FINAL WAGES**

**(Lab. Code §§ 201–203)**

**(Plaintiffs and Waiting Time Penalties Sub-Class)**

114.    Plaintiffs incorporate the preceding paragraphs as if fully alleged herein.

115.    At all relevant times, Plaintiffs and **Waiting Time Penalties Sub-Class** members have been entitled, upon the end of their employment with Defendant, to timely payment of all wages earned and unpaid before termination or resignation.

116.    At all relevant times, pursuant to Labor Code § 201, employees who have been discharged have been entitled to payment of all final wages immediately upon termination.

117.   At all relevant times, pursuant to Labor Code § 202, employees who have resigned after giving at least seventy-two (72) hours' notice of resignation have been entitled to payment of all final wages at the time of resignation.

118.   At all relevant times, pursuant to Labor Code § 202, employees who have resigned after giving less than seventy-two (72) hours' notice of resignation have been entitled to payment of all final wages within seventy-two (72) hours' of giving notice of resignation.

119.   During the applicable limitations period, Defendant failed to pay Plaintiffs all of their final wages in accordance with the Labor Code by failing to timely pay them all of their final wages.

120.   Plaintiffs are informed and believe that, at all relevant times during the applicable limitations period, Defendant has failed to timely pay **Waiting Time Penalties Sub-Class** members all of their final wages in accordance with the Labor Code.

121.   Plaintiffs are informed and believe that, at all relevant times during the applicable limitations period, Defendant has maintained a policy or practice of paying **Waiting Time Penalties Sub-Class** members their final wages without regard to the requirements of Labor Code §§ 201 or 202 by failing to timely pay them all final wages. Defendant's failure to pay all wages owed as alleged herein resulted in the untimely payment of final wages to **Waiting Time Penalties Sub-Class** members.

122.   Plaintiffs are informed and believe and thereupon allege that Defendant's failure to timely pay all final wages to them and **Waiting Time Penalties Sub-Class** members have been willful in that Defendant has the ability to pay final wages in accordance with Labor Code §§ 201 and/or 202 but have intentionally adopted policies or practices that are incompatible with those requirements.

123.   Pursuant to Labor Code §§ 203 and 218.6, Plaintiffs, on behalf of themselves and **Waiting Time Penalties Sub-Class** members, seek waiting time

penalties from the respective dates that their final wages had first become due until paid, up to a maximum of thirty days, and interest thereon.

124. Pursuant to Labor Code § 226, Code of Civil Procedure § 1021.5, the substantial benefit doctrine and/or the common fund doctrine, Plaintiffs, on behalf of themselves and **Waiting Time Penalties Sub-Class** members, seek awards of reasonable attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**

**CIVIL PENALTIES**

**(Lab. Code § 2698, *et seq.*)**

**(Garcia and Meza)**

125. Garcia and Meza re-allege and incorporate all preceding paragraphs, as though set forth in full herein.

126. Garcia and Meza are aggrieved employees as defined under Labor Code § 2699(c) in that they suffered violations alleged in this Complaint and were employed by the alleged violator, Defendant.

127. Garcia and Meza seek penalties under Labor Code §§ 2698 and 2699 for Defendant's violation of all Labor Code provisions included under Labor Code § 2699.5 and includes the penalty provisions, without limitation, based on the following California Labor Code sections: §§ 201, 202, 203, 204, 210, 226, 226.7, 510, 512, 558, 1194, 1197, 1198, 1199, 2698, and 2699, *et seq.*

128. The penalties shall be allocated as follows: 75% to the Labor and Workforce Development Agency (LWDA) and 25% to the affected employee.

129. Garcia and Meza also seek any and all penalties and remedies set forth in Labor Code § 558, which states:

(a) Any employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay

period for which the employee was underpaid in addition to an amount sufficient to recover underpaid wages. (3) Wages recovered pursuant to this section shall be paid to the affected employee.

(b)    If upon inspection or investigation the Labor Commissioner determines that a person had paid or caused to be paid a wage for overtime work in violation of any provision of this chapter, or any provision regulating hours and days of work in any order of the Industrial Welfare Commission, the Labor Commissioner may issue a citation. The procedures for issuing, contesting, and enforcing judgments for citations or civil penalties issued by the Labor Commissioner for a violation of this chapter shall be the same as those set out in Section 1197.1.

(c)    The civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law.

145.    Labor Code § 226.3 provides that "[a]ny employer who violates subdivision (a) of Section 226 shall be subject to a civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an initial violation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage deduction statement or fails to keep the required in subdivision (a) of Section 226." To the extent that Labor Code § 226.3 applies, Garcia and Meza also seek such penalties thereupon.

146.    Garcia and Meza have exhausted their administrative remedy by sending a certified letter to the LWDA and Defendant postmarked on September 12, 2022 (Garcia) and January 9, 2023 (Meza). The LWDA has not provided notice of its intent to investigate the alleged violations within 65 calendar days of the postmark date of the letters.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, all others similarly situated, pray for relief and judgment against Defendant as follows:

(1)    An order that the action be certified as a class action;

(2)    An order that Plaintiffs be appointed class representative;

(3)    An order that counsel for Plaintiffs be appointed class counsel;

(4)    Unpaid wages;

(5)    Actual damages;

1      (6)    Liquidated damages;

2      (7)    Pre-judgment interest;

3      (8)    Statutory penalties;

4      (9)    Civil penalties;

5      (10)   Costs of suit;

6      (11)   Reasonable attorneys' fees; and

7      (12)   Such other relief as the Court deems just and proper.

8      **DEMAND FOR JURY TRIAL**

9    Plaintiffs, on behalf of themselves and all others similarly situated, hereby

10 demand a jury trial on all issues so triable.

| | |
|---|---|
| Dated: February 29, 2024 | Respectfully submitted,<br>SETAREH LAW GROUP |
| | */s/ Tyson Gibb*<br>SHAUN SETAREH<br>JOSE MARIA D. PATINO, JR.<br>TYSON GIBB<br>Attorneys for Plaintiff<br>JUAN GARZA |
| Dated: February 29, 2024 | D.LAW, INC. |
| | */s/ Roman Shkodnik*<br>ROMAN SHKODNIK<br>Attorneys for Plaintiff<br>GABRIEL GARCIA |
| Dated: February 29, 2024 | LAVI & EBRAHIMIAN, LLP |
| | */s/ Cassandra A. Castro*<br>JOSEPH LAVI<br>VINCENT C. GRANBERRY<br>CASSANDRA A. CASTRO<br>Attorneys for Plaintiff<br>FRANCISCO J. MEZA |